IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JEREMY DALE REESE                                                    PLAINTIFF

　　　v.                                      Civil No. 09-5150

DR. HUSKINS, Benton County
Detention Center                                                   DEFENDANT

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

　　　Plaintiff, Jeremy Dale Reese (hereinafter Reese), filed this civil rights case pursuant to the

provisions of 42  U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis.*

　　　Reese is currently incarcerated in the Wynne Unit of the Texas Department of Criminal

Justice in Huntsville, Texas.  The events at issue in this case occurred when Reese was incarcerated

at the Benton County Detention Center (BCDC).  He maintains his constitutional rights were

violated in a number of ways.  Specifically, he alleges:  (1) he was denied adequate medical care

and needed supplies; (2) he was retaliated against; (3) he was denied access to the law library; (4)

his mail was being interfered with.

　　　Defendants filed a motion for summary judgment (Doc. 41).  Reese filed a response (Doc.

55) to the motion and supplements to his response (Doc. 57) and (Doc. 81).

## I.  Background

　　　Reese was booked into the BCDC on October 23, 2007, on pending criminal charges.

*Defendants' Exhibit* (hereinafter *Defts' Ex.*) 1 at pg. 1  On June 1, 2009, Reese plead guilty and was

sentenced to a period of incarceration at the Arkansas Department of Correction (ADC).  *Id.* at pgs.

3-6.  He remained incarcerated at the BCDC until his transfer to the ADC in November of 2009.

 *Defts' Ex.* 8.

-1-

On his intake medical questionnaire completed on October 23, 2007, Reese indicated he had no medical problems other than being allergic to codeine and having a history of Hepatitis C. *Defts' Ex.* 2 at p. 1. On October 31, 2007, Reese submitted a request for medical care for bleeding gums, Hepatitis C treatment, and a painful spleen. *Defts. Ex.* 3(B) at pg. 30.

Reese submitted medical requests for either bleeding gums, a broken filling or tooth, a toothache, or ineffective treatment in connection with his dental problems, on the following dates in 2007: October 31st; and November 12th. He submitted requests related to these same issues on the following dates in 2008: January 4th; January 11th; January 19th; January 23rd; January 26th; January 30th; February 2nd; April 2nd; April 21st; May 30th; June 17th; August 1st; August 29th; September 1st; December 16th; December 20th. He submitted requests related to these same issues on the following dates in 2009: January 7th; January 11th; January 22nd; February 7th; February 12th; February 13th; February 16th; February 17th; February 23rd; February 26th; February 28th; March 4th; March 6th; March 16th; March 24th; April 9th; April 18th; April 30th; May 3rd; May 7th; and June 30th. In Defendants' statement of indisputable material facts (Doc. 43 at ¶ 194), it indicates Reese submitted a request on October 21, 2009. There is a notation made by the nurse on February 8, 2008, that states "to dentist." *Defts' Ex.* 2(a) at pg. 19. However, no records have been submitted indicating Reese was in fact taken to a dentist or that an appointment was scheduled. While Reese received some medical care in the form of saline rinses, antibiotics, and Tylenol or Ibuprofen for pain, it appears he was not referred to, or seen by, a dentist.

Reese submitted numerous other requests/grievances asking for treatment including the following: (1) requests for treatment of a broken finger on August 4, 2008, August 29, 2008, September 1, 2008; (2) requests for treatment related to "hearing voices," suicidal thoughts, stress and anxiety problems on December 26, 2007, December 27, 2007, July 26, 2008, August 7, 2008,

AO72A
(Rev. 8/82)

September 12, 2008, and September 20, 2008; (3) requests for treatment for painful urination, bladder problems, abnormal discharge, prostate problems, or a sexually transmitted disease on November 12, 2007, May 28, 2008, July 26, 2008, September 12, 2008, September 13, 2008, November 4, 2008, November 10, 2008, November 12, 2008, December 3, 2008, December 8, 2008, December 28, 2008, December 30, 2008, January 9, 2009, April 28, 2009, May 2, 2009, and June 11, 2009; (4) requests due pain in the ribs from being "punched" by Officer Reyes on November 12, 2007, November 26, 2007, and December 9, 2007; (5) requests in connection with liver or spleen problems and Hepatitis C on October 31, 2007, January 9, 2008, and May 9, 2008. Reese additionally submitted numerous medical requests regarding allergy, or cold or flu like symptoms, and rashes.

Reese submitted requests to use the law library on December 24, 2008, December 28, 2008, January 8, 2009, January 15th, January 22nd, January 28th, February 1st, February 3rd, February 10th, February 15th, June 12th, June 21st, June 25th, July 24th     Each request was approved. However, in his January 28, 2009, request, Reese noted that his requests for use of the law library are always approved but he never gets called "out for the law library." *Defts' Ex*. 4(b) at pg. 1.  A few days later, in a request dated February 3, 2009, Reese complains he is not allowed enough time in the library. *Id.* at pg. 3.  In his February 10th request, Reese states he had been approved for the law library on February 1st but had yet to get to the library. *Id.* at p. 5. In his June 12, 2009, request he stated he had been to the law library on the 11th but had only been given five minutes in there. *Id.* at pg. 20.  In his July 4, 2009, request he states his last request had been on June 25th and he still had not been to the law library. *Defts' Ex.* 4(c). at pg. 5.

The law library log provided to the Court as an exhibit starts on December 28, 2008, and goes through August 28, 2009, it notes the date an inmate uses the library and generally contains

AO72A
(Rev. 8/82)

an in and out time. *Defs' Ex.* 7. The inmate also signs the log. *Id.* The log shows Reese used the library on the following days: December 30, 2008 (only incoming time noted); January 10, 2009 (5:30 p.m. to 7:05 pm); January 14th (7:02 p.m. to 8:20 p.m.); January 27th (12:27 p.m. to 2:11 p.m.); February 2nd (6:00 p.m. to 7:26 p.m.); February 9th (7:42 p.m. to 9:00 p.m.); February 17th (6:12 p.m. to 7:17 p.m.); May 21st (2:17 p.m. to 4:00 p.m.); June 12th (11:17 a.m. to 12:08 p.m.); June 20th (12:49 p.m. to 1:15 p.m.); June 20th (1:30 p.m. to 2:27 p.m.); June 24th (7:41 a.m. to 9:30 a.m.); July 7th (1:20 p.m. to 3:14 p.m.); July 15th (1:40 p.m. to 2:52 p.m.); and August 26th (1:35 p.m. to 3:21 p.m.). The log also indicates Reese declined law library time on: January 5, 2009; June 3rd; July 21st; and July 28th.

Reese submitted a grievance about being retaliated against on January 1, 2008, he indicated he had filed a lawsuit against the facility and wanted to be moved based on harassment and fear of retaliation. *Defs' Ex.* 4(c) at pg. 16. He filed another grievance January 5, 2008, stating his mail was being messed with and he had been told his Grandmother did not live in the house she had owned for years. *Defs' Ex.*4(c) at pg. 15. He said they were not letting his mail out or someone else was sending letters out in his name. *Id.* In response, he was asked who had said his Grandmother didn't live at the address Reese was sending mail to. *Id.* He was also told he was not being retaliated against. *Id.*

Reese submitted grievances about his mail not being sent out on May 20, 2009. *Defs' Ex.* 4(b) at pg. 16. He indicated a legal document mailed on April 29th had not reached its destination. *Id.* He indicated he was sending the document again. *Id.* In response, Captain Holly stated he would look into it. *Id.* On July 6th, Reese indicated he did not believe his letters addressed to the Magistrate Judge were getting mailed.. *Defs' Ex.* 4(c) at pg. 6. In response, he was told four letters addressed to the Magistrate Judge had been mailed on July 1st. *Id.*

-4-

Again on June 17, 2009, Reese complained his legal mail was not getting to where he was sending it. *Defts' Ex.* 4(b) at pg. 23. In response, he was told his mail log showed "tons" of legal mail going out. *Id.*

## II. Applicable Standard

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence and inferences in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

## III. Discussion

Defendants have moved for summary judgment on all of Reese's claims. They also moved for dismissal of all official capacity claims on the grounds that there is no proof of a policy or custom of Benton County that resulted in the alleged constitutional violations.

### Denial of Adequate Medical Care

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). To prevail on an Eighth Amendment claim, plaintiff must prove that defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but

-5-

deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs*, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

Medical personnel are given "considerable latitude . . . in the diagnosis and treatment of medical problems of inmates." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).  It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010)(internal quotation marks and citation omitted).  An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." Id.  Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference.  *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

Based on the record before us, there are clearly genuine issues of fact.  First, with respect to Reese's dental conditions, the medical requests and medical chart show Reese began asking for dental care on October 31, 2007, and continued to seek dental care on a fairly consistent basis throughout his incarceration at the BCDC.  Other than a single notation made by the nurse, it

does not appear, from what is before the Court, that Dr. Huskins even entertained the idea of referring Reese to a dentist.

Second, without an affidavit from Dr. Huskins, it is not possible to tell whether he concluded testing was not necessary in connection with Reese's history of Hepatitis C and his complaints of liver and spleen pain. Similarly, in the absence of an affidavit, and with the medical records virtually illegible, it is not possible to tell on what basis Dr. Huskins concluded no testing, beyond a single urinalysis, was necessary with respect to the penal discharge and that no referral, testing, or medication, was necessary for Reese's alleged "hearing voices," anxiety, and stress.

With respect to Lieutenant Carter and Captain Holly, I believe there are issues of fact as to whether they exhibited deliberate indifference to Reese's medical/dental needs when grievances about the situation were merely forwarded to the medical staff. Further, this appears to be the policy with regard to grievances addressing medical issues.

**Retaliation**

In general, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001)(citation omitted); *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)(same). "Indeed, the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." *Id. See also Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir. 1994)("[W]hen retaliatory conduct is involved, there is no independent injury requirement.").

-7-

To prevail on his retaliation claim, Reese must demonstrate: (1) that he engaged in protected activity; (2) that the defendants in response took adverse action; and (3) that his protected activity was the cause of the retaliation. *See Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994)(threat of retaliation is sufficient injury if made in retaliation for inmate's use of prison grievance procedure). "To avoid summary judgment, [Reese] must submit affirmative evidence [of] retaliatory motive." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) *Id.* (internal quotation marks and citation omitted). Reese has made no such showing. Defendants are therefore entitled to summary judgment on this claim.

### Access to the Law Library/Courts

Detainees have no "freestanding right to law library access or trained legal assistance." *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004)(citation omitted). Instead, "[i]nmates undeniably enjoy a constitutional right of access to the courts and the legal system." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996)(*citing Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817 (1997)). The right of access requires the provision of "prisoners with adequate law libraries or adequate assistance from persons trained in the law," *Bounds*, 430 U.S. at 828, to challenge their criminal charges, convictions, and sentences directly or collaterally or to challenge the conditions of their confinement through civil rights actions, *Lewis v. Casey*, 518 U.S. at 351. *See also Cody v. Weber*, 256 F. 3d 764, 767-68 (8th Cir. 2001)("right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court'")(*quoting Lewis*, 518 U.S. at 354-55).

-8-

I find Defendants are entitled to summary judgment on this claim.  First, Reese was represented by counsel and was also given access to the law library on multiple occasions.

Second, Reese's claim fails because he suffered no actual injury.  The right of access to the courts is not an abstract one and the inmate must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351.  *See also Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008)(Hartsfield failed to allege he was prevented from filing a complaint, or a filed complaint was dismissed for lack of legal adequacy.  He only roughly and generally asserted that he was prevented from filing because he did not know what arguments to make.  This claim is speculative and was properly dismissed); *Klinger v. Department of Corrections*, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic).  Reese has not alleged he missed any deadlines for filing documents with a court.  There is nothing to suggest his claims were dismissed for lack of legal adequacy or that he was in some manner prevented from filing an appeal, request for post-conviction relief, or a civil rights action.

### Interference with Mail

Inmates have a First Amendment right of free speech to send and receive mail.  *See Hudson v. Palmer*, 468 U.S. 517, 547 (1984).  "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment."  *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125 (1977).  Restrictions on this First Amendment right are valid "only if [they are] reasonably related to legitimate penological interests."  *Turner v. Safely*, 482 U.S. 78, 89 (1987).

AO72A
(Rev. 8/82)

Here,  Reese does not challenge a ban on the type of mail he could receive or send. He does not contend he was denied paper, writing instruments, or postage.  He has not suggested there was any ongoing practice of censorship or that the inspection procedures at the jail were unconstitutional. *Jensen v. Klecker*, 648 F.2d 1179 (8th Cir. 1981)(Inspection procedures of incoming or outgoing non-legal mail for contraband have been upheld as constitutional).  He does not deny that he was able to send and receive mail on a regular basis.  Instead, he maintains there were a couple of occasions when mail did not reach its destination.  He doesn't explain how he believes this is attributable to one or more of the Defendants.  In fact, there is no indication any of the named Defendants were even involved in the processing of mail at the facility.  He presents no argument that one or more of the Defendants intentionally intercepted or destroyed the letters.  *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)(Plaintiff must show regular and unjustifiable interference-- an isolated incident of mail tampering is usually insufficient to establish a constitutional violation); *Zimmerman v. Tribble*, 226 F. 3d 568, 572 (7th Cir. 2000)(allegations of sporadic and short-term delays and disruptions are insufficient to state a claim under the First Amendment); *Rowe v. Shake*, 196 F.3d 778, 782-783 (7th Cir. 1999)(relatively short-term and sporadic delays in receiving mail not the result of content-based prison regulation or practice is insufficient to state a First Amendment claim).  Defendants are clearly entitled to entry of summary judgment on this claim.

## IV.  Conclusion

For the reasons stated, I recommend that the motion for summary judgment (Doc. 41) be granted in part and denied in part.  Specifically, the motion should be granted with respect to the following claims:  (1) retaliation; (2) denial of access to the law library/courts; and (3) interference

-10-

with mail.  This leaves for later resolution Reese's claim that he was denied adequate medical and dental care.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 4th day of March 2011.


/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)